O'Neall *vs.* Hunt.

HEARD APRIL TERM, 1873.

O'NEALL *vs.* HUNT.

H. purchased, in 1863, with his own money, certain notes of J., given in 1857 and 1860, and in 1864 J. gave to H. a new note for the amount then due on said notes: *Held,* upon the evidence, that H. acted in the transaction as the agent of J., and that H. could only recover on the note as a Confederate transaction.

BEFORE MOSES, J., AT NEWBERRY, MAY TERM, 1872.

The bill in this case was filed 22d May, 1866, by Helen O'Neall, plaintiff, against Walter H. Hunt and M. J. Jenkins, defendants, for plaintiff's dower in a lot of land described in the bill, which was decreed to her.

The bill was retained for the purpose of adjudicating the questions raised by the answers of the two defendants.

The answer of M. J. Jenkins states that he purchased said lot of J. B. O'Neall and gave his note for the credit portion and took an obligation for titles, which note was paid off by W. H. Hunt, with Confederate money, and titles for said lot made to him by the said J. B. O'Neall. M. J. Jenkins insists that W. H Hunt shall be required to make him titles upon the payment of the value of the Confederate money in national currency.

The answer of W. H. Hunt admits that he did purchase said lot from J. B. O'Neall, on 27th October, 1863, by taking up, with the funds of Ann Oregon Garmany, three notes on M. J. Jenkins, given for the rent and part purchase money of said lot, and at the request of the said M. J. Jenkins did sell and convey to him the said lot, about 1st August, 1864, and took his note for the amount of the said three notes, and a mortgage of the said premises to secure said note.

He insists that he is entitled to have his mortgage forclosed.

It was referred to John T. Peterson to report the amount due on said mortgage, and he reported as follows :

It having been referred to the undersigned, by an order from the Hon. M. Moses, dated 14th October, 1871, to inquire and report the amount due and owing by M. J. Jenkins to W. H. Hunt, the character in which W. H. Hunt claims payment thereof, and the liability of the lot of land described in the bill for the payment of the same, also, whether or not Walter H. Hunt has conveyed said lot, by a good and sufficient title, to M. J. Jenkins, and the validity of the mortgage exhibited by said Hunt with his answer, the Referee respectfully submits the following as his report :

I find, from the pleadings, that M. J. Jenkins purchased the lot of land described in the bill from the Hon. John B. O'Neall, on the 22d day of August, 1860, for the sum of fifteen hundred dollars, eight hundred of which was paid in cash, and a note given for the remaining seven hundred ; said note is drawn payable on the 1st July, 1861, with interest from the 1st July last, and specifies that the title of said lot is to remain in the said J. B. O'Neall until the said purchase money is paid, and that, if default of payment occur, he is to have possession on demand, and may sell in satisfaction. The Hon. J. B. O'Neall also held two other notes on said Jenkins, given for the rent of said house and lot previous to the purchase.

One of these notes is dated on the 25th February, 1857, for $150, due one day after date, with interest from 1st January last, and is credited on 21st June, 1859, with $75, and on 24th March, 1860, with $50. The other note bears the same date, is also for the sum of $150, and payable on the 1st January next.

It further appears from the pleadings, and from the testimony of James F. Glenn, that some time in the year 1863 M. J. Jenkins (being then in the army) wrote to Glenn, and to W. H. Hunt, instructing them to sell a negro girl, and with the money so obtained to pay off the demands held by O'Neall ; that Glenn and Hunt conferred together, and Hunt proposed that they should raise the money between them, pay off the demands and keep the negro girl for the benefit of Jenkins' children, to which Glenn consented.

About that time an amount of Confederate States currency was placed in the hands of the said Hunt for the purpose of investment for the benefit of his niece, Miss Ann O. Garmany, with which money Hunt paid off the whole of Jenkins' debt to O'Neall, on the 27th of October, 1863, and took title in his own name. It further appears that on the first of August, 1864, a settlement was had between Hunt and Jenkins, and that the notes which Hunt had taken up amounted at that time to $1,153.07, for which amount Jenkins gave his obligation to Hunt, securing the same by a mortgage of the house and lot, and Hunt at the same time conveyed to Jenkins.

From the above statement of fact the Referee is of the opinion that Hunt was in some sort acting as the agent of Jenkins when he paid off the notes, and that, having done so with Confederate currency, he can only recover the value of said currency, to be ascertained from the provisions of an Act of the Legislature, ratified on the 26th March, 1869, and commonly known as the Corbin Act.

Having had a settlement with Jenkins on the 1st August, 1864, as before stated, and taken his obligation at a time when Confederate currency alone was in use, and for a consideration for which he had paid Confederate currency, the Referee can see no cause why the provisions of the aforesaid Act does not apply, and he has made up the following statement accordingly :

On the 1st August, 1864, the value of Confederate currency, as laid down in said Act, was as seven eighty-four to one of lawful money, making the demand on that day worth, in present currency, the sum of $147.87, to which add interest up to the first day of June, 1872, makes the sum of $227.72, which, in the opinion of the Referee, is the amount due and owing by the said M. J. Jenkins to the said Walter H. Hunt ; and that the said Walter H. Hunt claims said amount as the agent of Ann O. Garmany; and that the house and lot is liable under the mortgage given to the said W. H. Hunt by the said Jenkins, for the amount above stated. The Referee is of opinion that the deed made to M. J. Jenkins, by the said W. H. Hunt, on the 1st August, 1864, is a good and valid title, unless the Court should be of the opinion that the deed from J. B. O'Neall to W. H. Hunt, of 27th October, 1863, vests a right of dower in the wife of the said Hunt, in which case the Referee would recommend that Jenkins be protected in some way from such right of dower.

The following is the decree of the Court:

MOSES, J.   The plaintiff, Helen O'Neall, has obtained, heretofore, all the relief sought by her herein in the admeasurement of her dower in the lot of land described in the bill, and her interest in these proceedings is at an end ; and the case now being a suit between the co-defendants, in which Walter H. Hunt is the actor and Marcus J. Jenkins is the respondent, was heard on the report of John T. Peterson, Special Referee, and exceptions thereto by Walter H. Hunt.

The facts are clearly and fully set out by the Referee in his report, and his statement is unquestioned.

Hunt, however, excepts to the conclusions of the Referee, and insists that he is in error in determining that the contract represented by the note and mortgage from Jenkins to Hunt comes within the provisions of the Act of Assembly entitled "An Act to determine the value of contracts made in Confederate States notes, or their equivalent."

Upon a careful examination the Court finds nothing to weaken the conclusions of the Referee, as to the amount due on the mortgage.

It is, therefore, ordered and adjudged, that the exceptions to the report herein be overruled and the report be confirmed, and that Walter H. Hunt, in his character of trustee for Ann Oregon Garmany, (now Mayes), as established by proof, have a decree for two hundred and twenty-seven dollars and seventy-two cents, with interest thereon from the first day of June, 1872, together with the costs of this suit between the co-defendants, (except the cost of exceptions overruled, which must be paid from the recovery herein had), for the payment of which decree, including costs, the house and lot described in the pleadings are held liable, and upon the payment of which the mortgage from Jenkins to Hunt shall be fully satisfied, and must be so marked, according to law, if ever recorded, otherwise it must be delivered up and cancelled.

It is impossible to adjudicate any claim which the wife of Hunt may have for dower in the lot described in the bill, but that Hunt held the lot as trustee should leave Jenkins without apprehension on that subject.

Hunt appealed, and now moved this Court to review and reverse the decree, on the grounds:

First. Because the Circuit Judge erred in sustaining the decision of the Referee, that the note and mortgage given by Jenkins to Hunt, trustee, and set forth in this case, came within, and should be scaled by, the provisions of the Act of the General Assembly, entitled "An Act to determine the value of contracts, made in Confederate States notes, or their equivalent," although it appeared by the pleadings, and by the report of the Referee, and was disputed in the trial, that the consideration of said note and mortgage was three notes, given by the said Jenkins, to Hon. J. B. O'Neall, one for part of the purchase money of the house and lot described in the said mortgage, dated 22d day of August, 1860, and the other two for the rent of the said house and lot, dated 25th February, 1857.

Second. Because his Honor the presiding Judge erred in not deciding that Hunt, trustee, was entitled to the whole amount of this note and mortgage, upon the ground, in addition to the one just stated, that the said Jenkins had forfeited his right to the said house and lot, by not complying with the conditions contained in the note for

$700, given by him to the said J. B. O'Neall, for the credit portion of the purchase money of the said house and lot, and the said J. B. O'Neall had claimed said forfeit, and asserted and exercised the right therein vested in him to sell, by selling and conveying said house and lot to W. H. Hunt, which sale was sustained and confirmed by the said M. J. Jenkins, by his giving the aforesaid note and mortgage, and taking a deed for said lot from W. H. Hunt.

Third. Because, if neither of the foregoing grounds of appeal is sustainable, that then his Honor should, at least, have ordered said house and lot sold, and the proceeds divided between the said M. J. Jenkins and the said W. H. Hunt, in proportion to the amount of the purchase money of said house and lot, paid by them, respectively, including the rent notes paid by the said W. H. Hunt.

*Jones & Jones*, for appellant.

*Baxter*, contra.

April 25, 1873. The opinion of the Court was delivered by

MOSES, C. J. The question between Hunt and Jenkins, the only parties interested in the remaining issue in the case, depends, for its determination, on the agency of the latter in the purchase, transfer or payment of the notes. To hold that he procured them independent of any interest for or on behalf of Jenkins would subject him to a position at least not enviable.

Jenkins, being absent in the army in 1863, wrote to Hunt and one Glenn to sell a negro girl he owned, and with the proceeds to pay off the demands held by Judge O'Neall against him. They conferred on the subject, and the former proposed " that they should raise the money between them, pay off the demands and keep the negro girl for the benefit of Jenkins' children," to which Glenn assented. Before Hunt could treat in good faith for the notes for himself or any other than Jenkins, he was bound to inform him that he could no longer represent him in that behalf. He had induced Glenn to believe he would pay the notes for Jenkins, and he would indeed have been lulled into a false repose, if, without any notice to him, Hunt proceeded to purchase the notes for himself or as the friend or trustee of Miss Garmany. The uncontroverted facts clearly show that Hunt had led Glenn to suppose that he was acting for Jenkins—that he was paying the notes

for him. The extent of the indebtedness of Jenkins on the note of 1st August, 1864, so far as the consideration was involved, was the sum advanced by him, looking to and measured by the currency he paid.

The great and good man who was the owner of the notes was content to receive for them the prevailing circulation, although they were executed before the war, and payable in coin, and to entitle Hunt to a speculation not only at his, but also at Jenkins' expense, must depend on a very different state of facts from those which have been disclosed in the testimony.

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.